## AGREEMENT AND GENERAL RELEASE

**1.     Parties And Released Parties:**

This document sets forth the terms and conditions of the Agreement and General Release (hereinafter "Agreement") by and between Carmen Abatto (hereinafter "Releasor") and TFS Facility Services Georgia, LLC (hereinafter "TFS Georgia"). The term "Releasees" as used herein shall be defined as TFS Georgia, as well as all of TFS Georgia's corporate parents, subsidiaries, franchisors, franchisees, divisions, management companies and affiliates and its and their current and former officers, directors, employees, shareholders, servants, agents, officials, insurers, and attorneys, in their official and individual capacities, together with their predecessors, successors and assigns, both jointly and severally. In consideration of the mutual covenants and agreements set forth below, the parties agree as follows:

**2.     Payment And Consideration:**

Within 10 business days of the effective date of this Agreement as provided for below, TFS Georgia or its insurer shall pay to the Releasor a total payment of $2,650. Of this amount:

- $2,625 represents alleged back pay damages under the FLSA payable to Releasor, which will be subject to applicable deductions and withholding at the rate typically applicable to Releasor during her employment with TFS Georgia;
- $25 represents compensation for alleged claims of personal injuries payable to Releasor, including emotional distress, anxiety, humiliation, pain and suffering, embarrassment, mental anguish and emotional distress.

Within 30 business days of the effective date of this Agreement as provided for below, TFS Georgia or its insurer shall pay to the Releasor a total payment of $2,650. Of this amount:

- $2,625 represents liquidated damages under the FLSA payable to Releasor, which will not be subject to deductions and withholdings;
- $25 represents compensation for alleged claims of personal injuries payable to Releasor, including emotional distress, anxiety, humiliation, pain and suffering, embarrassment, mental anguish and emotional distress.

TFS Georgia or its insurer also agrees to pay $3,091.33 to "Morgan and Morgan, P.A.," for attorney's fees and costs within 50 business days of the effective date of this Agreement. Releasor and her counsel each agree to provide counsel for TFS Georgia with an executed W-9 form within 3 days of the execution of this Agreement and the provision of such forms is required before the payments can be issued.

If TFS Georgia fails to make any of the payments described above by their respective due dates, counsel for Releasor shall give notice to counsel for TFS Georgia by written or electronic means of such deficiency. TFS Georgia shall have three (3) business days from the date of such notice to cure the deficiency. If TFS Georgia does not cure the deficiency within three (3) business days then TFS Georgia agrees to pay an additional $1,000 to Releasor for each deficiency occurrence.

3.    **General Release:**

A.    For and in consideration of the total payment specified above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Releasor does knowingly and voluntarily release and forever discharge the Releasees from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demand whatsoever in law or in equity, whether known or unknown which the Releasor ever had, now has or may or might in the future have against the Releasees, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the effective date of this Agreement, and specifically, but not by way of limitation, to those claims arising by reason of or in any way connected with or which are or may be based in whole or in part on, or do or may arise out of or are or may be related to or with:

    i.    employment of and/or termination of employment between TFS Georgia and the Releasor;

    ii.    unlawful acts of any kind arising under or in reliance upon any statute (federal, state or local);

    iii.    deprivation of civil rights, unlawful acts of any kind, or discrimination under state, local or federal law or otherwise including, but not limited to, Fair Labor Standards Act (FLSA), Title VII of the Civil Rights Act of 1964, as amended; Civil Rights Act of 1991; Age Discrimination in Employment Act and Americans with Disabilities Act;

    iv.    interference with or breach of contract (express or implied, in fact or in law), detrimental reliance, breach of duty of good faith and fair dealing (express or implied) and/or breach of contract of any kind;

    v.    attorneys' fees, expenses or costs pursuant to 42 U.S.C. § 1988 or as otherwise may be allowed by law, including pursuant to any statute, contract or common-law claim; and

    vi.    any and all other claims arising under law or equity.

B.    It is further understood and agreed that this Agreement and the payment made hereunder constitutes full and final satisfaction of all claims of every nature, direct or indirect, against all persons, firms, or corporations, including those who are or might be held to be joint and/or successor tortfeasors, with any of the parties released hereby, as well as those to whom any of the parties released are, or may be held to be, liable by way of contribution or indemnity for the payment of all or any part of any claim arising out of, or directly or indirectly related to the claims set forth in this Agreement.

C.    Notwithstanding the foregoing, the Releasor does not release any claims under the Age Discrimination in Employment Act that may arise after the date of execution of this Agreement as provided for by the Older Workers Benefit Protection Act. The parties acknowledge that the Releasor may exercise any right provided by the Older Workers Benefit Protection Act concerning the obtainment of a judicial determination of the validity of this Agreement and the Releasees may not abrogate this Agreement because of such action by the Releasor.

D.      By signing this Agreement, and upon payment of the consideration described in Section 2, Releasor agrees that she has been paid by TFS Georgia or its insurer as part of this Agreement and that this amount represents all unpaid wages she is entitled to recover under the FLSA, including unpaid overtime, unpaid minimum wage and liquidated damages and Releasor further agrees that Releasor has not worked any hours for which Releasor has not already been paid or for which Releasor is owed compensation under the Fair Labor Standards Act or otherwise. Releasor declares under penalty of perjury that the foregoing statements in this Paragraph D are true and correct and she further declares under penalty of perjury that any claim she makes in the future alleging that she is owed additional unpaid wages or payments from the Releasees would not have any factual basis, and therefore, would not be brought in good faith.

_____        _____
Signature                                                            Date

**4.      Covenant Not To Sue:**

Releasor further covenants and acknowledges that neither the Releasor, nor any person, organization or other entity acting on the Releasor's behalf has or will sue or cause or permit suit against the Releasees upon any claim released herein or to participate in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon or otherwise enforce or accept any judgment, decision, award, warranty or attachment upon any claim released herein. In the event of any claim by an agency or federal or state government or a claim by any person against the Releasees for conduct by the Releasees against the Releasor for any conduct arising prior to the effective date of this Agreement, the Releasor further agrees and covenants to return to TFS Georgia upon receipt any sums paid by or to the Releasor or collected on the Releasor's behalf paid pursuant to any such claim.

**5.      Knowing And Voluntary Waiver And Release:**

A.      It is understood and agreed that this Agreement is executed by the Releasor knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities or value of the Releasor's claims.

B.      The Releasor also acknowledges that no promise or inducement has been offered or made except as set forth in this Agreement.

C.      As part of the consideration for the conditions of the settlement as set forth above, the Releasor expressly warrants and represents that: (a) the Releasor is legally competent to execute this Agreement; (b) the Releasor has not assigned, pledged, or otherwise in any manner whatsoever sold or transferred, either by instrument in writing or otherwise, any claim, cause of action, or other legal right of whatever kind and nature, which the Releasor has or may have by reason of the incident described above or any matters arising out of or relating thereto; (c) there are no outstanding subrogation claims or liens of any type or character, by reason of the incident detailed herein, including no lien or right of reimbursement for any healthcare-related expenses relating to or in any way connected with the FLSA claims released in this Agreement, including but not limited to liens or rights created by or pursuant to agreement; state

or federal law; O.C.G.A. §§ 44-14-470, et seq. and 49-4-148, et seq.; *Medicare/Medicaid;* TRICARE; CHAMPVA; ERISA; or employee benefit plan.

6. **Entire Agreement:**

A.    This Agreement constitutes the entire agreement between the Releasor and TFS Georgia pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular manner whatsoever except by a writing duly executed by the Releasor and an authorized representative of TFS Georgia.

B.    In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

7. **Effective Date:**

Releasor retains the right to revoke this Agreement for seven (7) days after execution thereof. This Agreement shall not become effective or enforceable, until the aforesaid revocation period has expired. The Releasor acknowledges that, upon expiration of the revocation period, this Agreement will be effective, binding and irrevocable. The Releasor acknowledges that revocation of this Agreement must be made in writing and received by the below-named individual executing this Agreement on behalf of TFS Georgia within seven (7) days after the Releasor's execution of this Agreement. The Releasor acknowledges and agrees that acceptance of the benefits specified herein after the revocation period expires acknowledges that the Releasor has not revoked this Agreement as permitted under this paragraph.

8. **Confidentiality:**

A.    The understanding set forth in this Agreement shall be considered of the highest confidentiality. The Releasor recognizes that the obligation of confidentiality described in this paragraph is a fundamental condition of this Agreement.

B.    The Releasor covenants that, except as required by law, the Releasor will not make any disclosure of any kind to any person or organization concerning the terms of this Agreement, the settlement discussions leading up to this Agreement, the sums and benefits paid as consideration thereof and the facts underlying the claims against the Releasees. Releasor further agree that the Releasor will not initiate discussions with others regarding the settlement of this matter and will not make statements to others that indicate, in any way, that the Releasor was paid monies as a part of the resolution of this matter. Nothing contained herein shall be construed to prevent the disclosure of the amount and terms of settlement to the Releasor's accountants, auditors or attorneys reviewing the Releasor's financial records or preparing tax returns, or reporting to tax authorities or to any regulatory agency, or court when required by law or court order to do so.

C.    The Releasor covenants that, if the Releasor is subpoenaed or compelled to testify, or intends to provide a written or oral statement of any kind to anyone regarding the

Releasor's employment with *TFS Georgia, the Releasor will give seven (7) days written advance* notice to TFS Georgia by submitting written notice to the below named representative of TFS Georgia by certified mail, return receipt requested.

Marybeth Hall
The TFS Group, LLC
4355J Cobb Parkway
Suite 207
Atlanta, GA  30339

D.     The Releasor further covenants that, if any portion of this Agreement becomes the subject of litigation, the Agreement will be placed under seal, to the extent permitted by the court, before being filed in the public record and the Releasor will take the necessary steps to assure the continued confidentiality of the terms of this Agreement notwithstanding any dispute relating to its terms.

E.     The Releasor acknowledges and covenants that, in the event of a breach of Paragraph 8 of this Agreement in a court of competent jurisdiction, the Releasor shall pay liquidated damages to TFS Georgia in the amount of $1,000 per breach in addition to all other damages and rights TFS Georgia may have against the Releasor as provided for by this Agreement and otherwise.

F.     Nothing in this paragraph or this Agreement is intended to, nor shall it, prohibit the parties from providing testimony or information in any proceeding defined under 18 U.S.C. § 201, nor is it intended in any way to intimidate, coerce, deter, persuade, or compensate any party with respect to providing, withholding, or restricting any communication whatsoever to the extent prohibited under 18 U.S.C. §§ 201, 1503, 1512, or any similar or related provision of state or federal law.

G.     The Releasor and TFS Georgia agree that, in the event that Marybeth Hall, or her successor, is contacted by a prospective employer of the Releasor, Ms. Hall or her successor only will provide the Releasor's dates of employment, pay rates and job position with TFS Georgia.

**9.     Successors And Assigns:**

This Agreement shall be binding upon the Releasor and the Releasor's heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and shall inure to the benefit of the Releasees and their predecessors, successors and assigns.

**10.     Non-Admission:**

Releasor acknowledges that the payment set forth herein does not constitute any admission of liability on the part of the Releasees, by whom liability is expressly denied.  This Agreement shall not be deemed an admission of liability or a violation of any law, rule, regulation or order, of any kind.

11.   **Miscellaneous:**

A.    It is understood that the Releasor has the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and is advised to consult with legal counsel prior to signing this Agreement. The Releasor also acknowledges that, before signing this Agreement, the Releasor has read and fully understands each paragraph thereof. Any notice required to Releasor under this Agreement shall be satisfied by written or electronic notice to the attorney for the Releasor (Ryan Morgan).

B.    The Releasor acknowledges that, upon the effective date of this Agreement, the Releasor will fully and irrevocably release any and all claims the Releasor may have against the Releasees as specified in this Agreement.

C.    The Releasor acknowledges that the Releasor has twenty-one (21) days within which to consider whether or not the Releasor desires to enter into this Agreement and any decision by the Releasor to execute this Agreement prior to that time is a knowing and voluntary decision.

D.    This Agreement is executed with the full knowledge and understanding on the part of the Releasor that there may be more serious consequences, damages or injuries, which are not now known, and that any draft or benefits conferred herein to the Releasor in consideration of this Agreement are accepted as final. The Releasor further agrees and represents that it is within the Releasor's contemplation that the Releasor may have claims against the Releasees of which, at the time of the execution of this Agreement, the Releasor has no knowledge or suspicion, but the Releasor agrees and represents, without affecting the generality of the foregoing paragraphs, that this Agreement extends to all claims in any way based upon, connected with or related to the matters described herein, whether or not known, claimed or suspected by the Releasor.

E.    It is further agreed and understood that the Releasor will indemnify, defend and hold harmless the Releasees for all claims and damages, including attorneys' fees and costs, resulting from the Releasor's material breach of this Agreement as proved in a court of competent jurisdiction. The Releasor acknowledges that TFS Georgia may bring suit to enforce the terms of this Agreement and to recover damages for breach of this Agreement, including a suit for equitable relief and injunctive relief, and consents to the jurisdiction of any Georgia court for suit brought regarding the provisions of this Agreement. Additionally, it is further agreed and understood that the Releasees will indemnify, defend and hold harmless the Releasor for all claims and damages, including attorneys' fees and costs, resulting from the Releasees' material breach of this Agreement as proved in a court of competent jurisdiction.

F.    The Releasor agrees to pay federal or state taxes, if any, which are required by law to be paid by the Releasor with respect to any non-wage portions of this settlement. The Releasor further agrees to indemnify and hold the Releasees harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any government entity against the Releasees for any amounts claimed due on account of any non-wage portions of the amount paid pursuant to this Agreement or pursuant to claims made under any federal or state tax laws, and any costs, expenses or damages sustained by TFS Georgia by reason of any such claims, including any amounts paid by TFS Georgia as attorneys' fees, deficiencies, levies, assessments,

fines, penalties, interest or otherwise. *This indemnity provision only applies to such taxes that Releasor is responsible to pay.* As further consideration for the payment herein, the Releasor hereby agrees to protect and hold harmless the Releasees against any claims for subrogation or liens of any nature arising out of the said incident and/or resulting injuries and/or damages, including, but not limited to, a Medicare lien. Should any person or entity, including but not limited to, any insurer, reinsurer, health care provider and/or health insurance provider of the Releasor and/or Medicare, make such a claim against the Releasees for any such damages, the Releasor hereby agrees to defend, indemnify and hold harmless the Releasees from any and all such claims, liens, charges, fees, costs, interest and other sums.

G.   The Releasor acknowledges that neither Releasor's attorney, TFS Georgia nor its attorneys make any representation as to the tax consequences, if any, of the provisions of this Agreement.

H.   This Agreement may be executed in multiple counterparts and all counterparts shall constitute one agreement binding on each of the parties hereto, regardless of whether each party hereto is a signatory to the same counterpart. Fax signatures in lieu of original signatures are acceptable.

**IN AGREEMENT HERETO,** Releasor and the below representative of TFS Georgia set their hand and seal.

_____          _____
Carmen Abatto – Releasor                                  Date

_____          5/5/14
Marybeth Hall – Representative for TFS Georgia      Date